Dawn M. McCraw, WSBA #54543
Price law Group, APC
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5585
F: (866) 683-3985
E: dawn@pricelawgroup.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| Donte Bell,<br><br>    Plaintiff,<br>vs.<br><br>National Credit Services, Inc.; Assurant, Inc. (a/k/a Sure Deposit); Equifax Information Services, LLC; Experian Information Solutions, Inc.; and Trans Union, LLC,<br><br>    Defendants. | **Case No.: 2:19-cv-1727**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. THE FAIR CREDIT REPORTING ACT [15 U.S.C. § 1681 et. seq.] |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Donte Bell ("Plaintiff"), through his attorneys, alleges the following against Defendants, National Credit Systems, Inc. ("NCS"); Assurant, Inc., a/k/a Sure Deposit ("Assurant"); Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and Trans Union, LLC ("Trans Union").

## **INTRODUCTION**

1. Count I of Plaintiff's Complaint is based upon the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), which prohibits furnishers from reporting incomplete or inaccurate information.

2. Count II of Plaintiff's Complaint is based upon the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b), which requires credit reporting agencies to assure maximum possible accuracy of the information they report.

3. Count III of Plaintiff's Complaint is based upon the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681i, which prohibits credit reporting agencies from reporting incomplete or inaccurate information after it has been disputed.

## JURISDICTION AND VENUE

4. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

5. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district; as such, personal jurisdiction is established.

## PARTIES

6. Plaintiff Donte Bell is a consumer and natural person allegedly obligated to pay a debt, and a citizen of the United States of America who presently resides in Renton, Washington.

7. Defendant NCS is a debt collector. NCS is a *person* as defined by 15 U.S.C. § 1681a(b). NCS is a Georgia corporation with its principal place of business located in Atlanta, Georgia, and it can be served at CT Corporation, 2800 156th Ave, SE, Ste 105, Bellevue, WA 98007. NCS engages in the practice of furnishing consumer information to consumer reporting agencies and is therefore a *furnisher of information* as contemplated by 15 U.S.C. § 1681s-2(a) & (b). Upon information and belief, NCS

is an agent of Copper Ridge Apartments, LLC ("Copper Ridge") for the purpose of collecting its debt. Upon information and belief, either NCS or Copper Ridge may be listed as the furnisher on some reseller credit reports although NCS is the actual furnisher of information.

8. Defendant Assurant is an insurance provider which offers, among other products, specialty insurance products for multifamily housing complexes. Upon information and belief, "Sure Deposit" is a service mark owned by Assurant. Assurant is a *person* as defined by 15 U.S.C. § 1681a(b). Assurant's principal place of business is located in New York and it can be served at 28 Liberty Street, New York, New York 10005. Assurant engages in the practice of furnishing consumer information to consumer reporting agencies and is therefore a *furnisher of information* as contemplated by 15 U.S.C. § 1681s-2(a) & (b).

9. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). On information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.

10. Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). On information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third

parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

11. Defendant Trans Union is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). On information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 W. Adams Street, Chicago, Illinois 60661.

12. On information and belief, Equifax, Experian, and Trans Union disburse *consumer reports* to third parties under contract for monetary compensation.

13. At all relevant times, all Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**

14. Since in or around 2010, Plaintiff was employed in a salaried corporate position by Verizon Wireless ("Verizon") in Washington.

15. When Plaintiff's Bellvue, Washington Verizon office closed in or around late 2012, he had the option to find a different employer or to continue to work for Verizon and move to a different state with a relocation package.

16. Plaintiff chose to move to Utah and stay with Verizon.

17. Although Plaintiff enjoyed working for Verizon corporate, he did not like Utah, and moved back home to Washington in late 2013. Plaintiff lived with a friend for the first couple of months.

18. When Plaintiff arrived back in Washington, Verizon had no corporate jobs available; Plaintiff's only option to remain at Verizon was to work in a retail store in sales for commission rather than the steady salary he had previously.

19. Plaintiff had no experience in sales, but he discovered from Verizon that he had to remain working for them for two years from the time he had moved to Utah or pay back the full amount of the relocation package, which was significant, so he worked at the Verizon retail store.

20. In early 2014, Plaintiff moved into a single apartment at Copper Ridge Apartments, 4600 Davis Ave S, Renton, WA 98055.

21. Plaintiff recalls paying Sure Deposit/Assurant around $500 for insurance in lieu of paying a traditional security deposit.

22. Plaintiff's understanding was that the Sure Deposit/Assurant insurance would protect him from issues, such as breaking a lease and other move-out problems, and that with the Sure Deposit insurance, he should have no additional fees upon move-out unless there was damage.

23. Plaintiff's commission income fluctuated and in or around mid to late 2014, Plaintiff recalls that he was two to seven days late on his rental payment to Copper Ridge; this happened two or three months in a row.

24. In or around September 2014, Plaintiff attempted to pay his rent, but Copper Ridge would not accept his money.

25. Copper Ridge told Plaintiff he was being evicted.

26. Plaintiff was surprised because Copper Ridge gave him no warning, and he had never failed to pay, he had just been late a couple times when he had to wait for his next paycheck.

27. Thereafter, Copper Ridge filed an eviction complaint against Plaintiff and obtained a judgment against him on September 30, 2014.

28. Plaintiff moved out of Copper Ridge on or about October 10, 2014.

29. Copper Ridge continued to try to collect the rent owed for the remainder of the lease and eviction fees (the "Account") after Plaintiff left the apartment.

30. On or about May 9, 2019, Plaintiff checked his credit report through non-party Privacy Guard and discovered that:

    a. Defendant Equifax was reporting four (4) accounts related to the single apartment Account as four separate debts each in the amount of $5,393 with "Copper Ridge Apts" reporting as the furnisher;

    b. Defendant Experian was reporting six (6) accounts related to the single apartment Account as six separate debts, three in the amount of $5,393, and three in the amount of $1,500, all with "National Credit Systems" reporting as the furnisher;

    c. Defendant Trans Union was reporting six (6) accounts related to the single apartment Account as six separate debts, three (3) in the amount of $5,393

with "Copper Ridge Apts" reporting as the furnisher, and three (3) in the amount of $1500 with "Sure Deposit" reporting as the furnisher.

    d. In total, there were sixteen (16) accounts of different amounts and by three (3) different furnishers totaling a debt owed of between $20,679 and $21,572, all reporting to Plaintiff's credit reports with the same account number, 307**** with open dates of November 2014, but arising from only the single Account allegedly incurred in or around October 2014.

31. Thereafter, Plaintiff called Copper Ridge to understand what all the alleged charges were; Copper Ridge referred Plaintiff to NCS, and Plaintiff called NCS.

32. On or about May 14, 2019, Plaintiff received a response email from NCS attaching an itemized list of apartment costs: $1,953 for rent owed, $425 for late charges, $2,500 for lease termination, $1,447 for an eviction fee, and $569 of miscellaneous charges. The total amount NCS said Plaintiff owed on the Account was $6,893.56.

33. On or about May 29, 2019, Plaintiff mailed certified letters to Defendants Equifax, Experian, and Trans Union disputing the erroneous and duplicative reporting of the multiple Copper Ridge, NCS, and Sure Deposit accounts.

34. In the dispute letters, Plaintiff explained that there was only ever one Account associated with his Copper Ridge Apartments tenancy and that he did not owe multiple debts.

35. Upon information and belief, all credit reporting agencies forwarded Plaintiff's dispute to NCS, Copper Ridge, and Sure Deposit/Assurant.

36. Plaintiff has confirmation that his certified dispute letters were received by TransUnion on July 3, 2019, by Equifax on July 1, 2019, and by Experian on July 1, 2019.

37. Upon information and belief, none of the credit reporting agencies responded to Plaintiff's disputes.

38. Upon information and belief, neither NCS, Copper Ridge, nor Sure Deposit/Assurant responded to Plaintiff's disputes.

39. On or about September 26, 2019, Plaintiff obtained his updated Privacy Guard credit reports.

40. Defendant Equifax was reporting the Account as two (2) tradelines, both in the amount of $5,393 with "Copper Ridge Apts" reporting as the furnisher.

41. Defendant Experian was reporting the Account as four (4) tradelines, two in the amount of $5,393 with "National Credit Systems" reporting as the furnisher, and two in the amount of $1,500 with "National Credit Systems" reporting as the furnisher.

42. Defendant Trans Union was reporting the Account as two (2) tradelines, one in the amount of $5,393 with "Copper Ridge Apts" reporting as the furnisher, and one in the amount of $1,500 with "Sure Deposit" reporting as the furnisher.

43. Defendant Copper Ridge is not reporting to Plaintiff's Equifax report that any of its accounts are "disputed" by Plaintiff.

44. Due to the reporting by Defendants, Plaintiff has had difficulty obtaining credit at favorable rates and approval by commercial apartments.

45. Recently Plaintiff tried to purchase a car but was only able to qualify for interest rates between 13% and 20% because of the reporting by Defendants' to his credit but could not afford it.

46. This is humiliating for Plaintiff and has caused great emotional distress.

## COUNT I

**Defendants NCS and Assurant**
**(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

47. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. The FCRA requires furnishers, such as NCS and Assurant, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by that furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

49. Defendants NCS and Assurant failed to conduct a reasonable investigation following their receipt of disputes from Equifax, Experian, and Trans Union, under 15 U.S.C. § 1681s-2(a)(2)(B).

50. Defendants NCS and Assurant have willfully provided inaccurate information to Defendants Equifax, Experian, and Trans Union, despite 15 U.S.C. § 1681c(a).

51. Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing serious damage and harm including the loss of opportunities to obtain credit or better credit conditions, emotional distress, and mental anguish.

52. Defendants NCS and Assurant are liable under sections 1681n and 1681o of the FCRA by engaging in the following conduct that violations 15 U.S.C. § 1681s-2(b):

    a. Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

    b. Willfully and negligently failing to review all relevant information;

    c. Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

    d. Willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

    e. Willfully and negligently failing to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

    f. Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to the credit reporting agencies; and

    g. Willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

53. Defendants NCS and Sure Deposit are liable to compensate Plaintiff for the full amount of statutory, actual, and punitive damages, along with attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. §§ 1681n & 1681o.

## COUNT II

### Defendants Equifax, Experian, and Trans Union
### (Violations of the FCRA, 15 U.S.C. § 1681e(b))

54. Plaintiff incorporates by reference paragraphs one (1) through forty-six (46) of this Complaint as though fully stated herein.

55. The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

56. Defendants Equifax, Experian, and Trans Union reported inaccurate duplicative debts related to the Account to Plaintiff's credit reports.

57. Defendants Equifax, Experian, and Trans Union failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information, and file, in violation of 15 U.S.C. § 1681e(b).

58. As a result of the above-described violations of § 1681e(b), Plaintiff has sustained damages including the loss of credit opportunities and favorable credit terms, emotional distress, humiliation, and mental anguish.

59. Defendants Equifax, Experian, and Trans Union are liable under sections 1681n and 1681o of the FCRA by engaging in conduct that violates 15 U.S.C. § 1681e(b).

60. Defendants' violations of the 15 U.S.C. § 1681e(b) were willful and therefore Plaintiff is entitled to seek statutory and punitive damages.

## COUNT III

### Defendants Equifax and Experian
### (Violations of the FCRA, 15 U.S.C. § 1681i)

61. Plaintiff incorporates by reference paragraphs one (1) through forty-six (46) of this Complaint as though fully stated herein.

62. The FCRA provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate or delete the item from the file within thirty (30) days of receiving the consumer's dispute notice. 15 U.S.C. § 1681i(a)(2)(A).

63. The Act further requires the credit reporting agency, within 5 business days of receiving notice of the consumer's dispute, to provide notification of the dispute to the person who furnished the information in dispute and requires the credit reporting agency to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A). In conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

64. Since Plaintiff's discovery of the inaccurate account until the present, Defendants Equifax and Experian have reported inaccurate information on Plaintiff's credit report.

65. Defendants Equifax and Experian failed to conduct a reasonable reinvestigation of the inaccuracy that the Plaintiff disputed, in violation of 15 U.S.C. § 1681i.

66. Defendants Equifax and Experian failed to review and consider all relevant information submitted by Plaintiff.

67. Defendants Equifax and Experian are liable under sections 1681n and 1681o of the FCRA by engaging in conduct that violates 15 U.S.C. § 1681i.

68. Defendants' violations of the 15 U.S.C. § 1681i were willful and therefore Plaintiff is entitled to seek statutory and punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendant violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Any pre-judgment and post judgment interest as may be allowed under the

    law; and

G. For such other and further relief as the Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a trial by jury in this action.

                                        RESPECTFULLY SUBMITTED,

DATED: October 25, 2019

                                */s/Dawn M. McCraw*
                                Dawn M. McCraw, WSBA #54543
                                Price law Group, APC
                                8245 N. 85th Way
                                Scottsdale, AZ 85258
                                T: (818) 600-5585
                                F: (866) 683-3985
                                E: dawn@pricelawgroup.com
                                *Attorney for Plaintiff*
                                *Donte Bell*