UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONTE BELL,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL CREDIT SERVICES INC.,<br><br>　　　　　　　　Defendant. | CASE NO. 2:19-cv-01727 RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Before the Court is Defendant National Credit Systems, Inc.'s ("NCS") "Motion for Attorneys' Fees, Costs and Sanctions" pursuant to Fed. R. Civ. P. 11. Dkt. 82. NCS argues that Plaintiff Donte Bell's Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) ("FCRA") claim against NCS is frivolous and Mr. Bell knew this before he filed his lawsuit. NCS seeks not only its attorney fees and costs, but dismissal of Mr. Bell's Second Amended Complaint (Dkt. 59) in its entirety, which also includes claims brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Revised Code of Washington's Unfair Business Practices –Consumer Protection Act Chapter 19.86 ("WCPA"). Mr. Bell opposes the motion and seeks attorney's fees and costs incurred in responding to the motion. Dkt. 83. NCS filed a reply (Dkt. 84) and after filing a notice of intent (Dkt. 85), Mr. Bell filed a surreply (Dkt. 86).

REPORT AND RECOMMENDATION - 1

For the reasons stated herein, the undersigned recommends NCS's Rule 11 motion be denied and that Plaintiff be awarded his attorney fees and costs incurred in defending this motion.

## PROCEDURAL BACKGROUND

NCS did not bring its motion for sanctions in a separate motion as required by Rule 11(c)(2), but instead requests that Mr. Bell's entire case be dismissed. NCS's motion is a badly disguised motion to dismiss based on Mr. Bell's failure to state a claim under the FCRA, which is only one of the three claims asserted in the Second Amended Complaint. Dkt. 59. In addition, NCS attached over 180 pages of exhibits to its motion and an additional 106 pages to its reply. Dkt. 82, Exhibits A through M; Dkt. 84, Exhibits 1 through 7. None of the exhibits are authenticated and most are not contemplated by the Second Amended Complaint.

In response, Mr. Bell treated the motion as a motion to dismiss with an adjunct claim for attorney fees and costs. Dkt. 83. In reply, NCS reiterates that it seeks dismissal of Mr. Bell's entire case as a Rule 11 sanction. Dkt. 84.

The Court declines to turn NCS's Rule 11 motion into a motion to dismiss or for summary judgment. The only issue here is whether Mr. Bell's FCRA claim is legally or factually baseless from an objective perspective and whether his attorney conducted a reasonable and competent inquiry before signing and filing it. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation marks and citation omitted). If the Court determines that Rule 11 has been violated, the Court "may" impose sanctions. *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir.1994). The imposition of sanctions is "not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell*, 496 U.S. at 396.

REPORT AND RECOMMENDATION - 2

Moreover, sanctions imposed under Rule 11 must "be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).

If NCS seeks dismissal on the merits of Mr. Bell's claims, it should bring a properly supported dispositive motion after the close of discovery and within the deadline set by the Court. Even if the Court were to consider the unauthenticated documents presented by NCS, to which Mr. Bell has objected, NCS fails to establish that Mr. Bell's allegations are factually baseless or were presented for an improper purpose. Instead, the disputes raised by NCS may, and should, be resolved in the ordinary course of litigation. *See* Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendment (explaining that Rule 11 motions should not be used "to intimidate an adversary into withdrawing contentions that are fairly debatable ...."); *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986), *superseded by statute on other grounds* ("If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time the position is adopted, then sanctions should not be imposed.").

As explained herein, NCS has failed to demonstrate that Mr. Bell's allegations violate Rule 11 or that the dispositive and draconian sanctions it seeks are appropriate.

## FACTS RELEVANT TO FCRA CLAIM

The relevant facts supporting Mr. Bell's FCRA claim are contained in his Second Amended Complaint. Dkt. 59. On September 30, 2014, Copper Ridge Apartments ("Copper Ridge") obtained an eviction judgment against Mr. Bell for unpaid rent, interest, attorney fees, and costs. With additional rent due and owing, utilities, an early termination fee, and damage to the property, Copper Ridge calculated that Plaintiff owed it $6,893.56. Dkt. 59, ¶¶29-30; Dkt. 82, p. 3.

About three years later, when reviewing his three bureau credit report, Mr. Bell discovered that Equifax was reporting four separate accounts from the furnisher "Copper Ridge Apts," each in the amount of $5,393.00, effectively reporting a total of $21,572.00 owed to "Copper Ridge Apts"; Experian was reporting six separate accounts from the furnisher "National Credit Systems" (Defendant NCS), with three in the amount of $5,393.00, and three in the amount of $1,500.00, effectively reporting a total of $20,679.00 owed to "National Credit Systems"; and Trans Union was reporting six separate accounts, three in the amount of $5,393.00 from the furnisher "Copper Ridge Apts", and three in the amount of $1500.00 from the furnisher "Sure Deposit." Altogether, Trans Union was reporting a total owed of $20,679.00; $16,179.00 to "Copper Ridge Apts" and $4,500.00 to "Sure Deposit." Dkt. 59, ¶ 32.

On May 14, 2019, NCR sent Mr. Bell an email with a breakdown of the amounts, which showed that Mr. Bell owed a total of $6,893.56 to Copper Ridge only. *Id.*, ¶ 34. NCS made no reference to the "Sure Deposit" entity listed in Trans Union report. *Id.*, ¶ 35. In addition, the account number listed by NCS (3057738) was a completely different account number than was listed on each of the multiple reporting of debts by NCS to Mr. Bell's credit reports (307****) and the amount of $6,893.56 never appeared on his credit reports, leading him to believe there may be another debt out there on top of the multiple reporting of debts. Dkt. 83, Declaration of Dawn McCraw, ¶ 5.

Mr. Bell mailed letters to Equifax, Experian, and Trans Union disputing the erroneous and duplicative reporting of the $6,893.56 eviction debt as multiple accounts. Dkt. 59, ¶¶37-38. The CRAs forwarded Mr. Bell's disputes to NCS. *Id.* at ¶ 39. On September 26, 2019, after NCS's investigation, reporting errors by NCS still remained. Dkt. 59, ¶¶ 43-47. At that time, Experian had changed its reporting of the debt to reflect four separate accounts from the

REPORT AND RECOMMENDATION - 4

furnisher "National Credit Systems," two in the amount of $5,393.00 and two in the amount of $1,500.00, effectively reporting a total of $13,786.00 owed to "National Credit Systems." *Id.*, ¶ 45. Equifax was reporting the debts as two debts of $5,393.00 owed to Copper Ridge, and Trans Union reported $1,500 owed to Sure Deposit and $5,393.00 owed to Copper Ridge. *Id.*

Mr. Bell claims statutory harm under the FCRA caused by NCS's duplicitous reporting and FDCPA and WCPA claims (which are not addressed in NCS's Rule 11 motion) for misrepresenting the amount of debt he owes, failing to report any account as disputed, and for reporting the single debt as multiple debts. *Id.*, ¶¶ 54, 81-90.

## STANDARD OF REVIEW

An attorney who signs and files a pleading "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the matter "is not being presented for any improper purpose" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(1), 11(b)(2). Rule 11(b)(3) requires that "the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

To enforce this section, Rule 11(c) provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "The central purpose of Rule 11 is to deter baseless filings." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, Inc., 971 F.2d 244, 254 (9th Cir. 1992) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384

REPORT AND RECOMMENDATION - 5

(1990)). A party moving for sanctions must do so separately from any other motion and may not present a motion for sanctions to the court until 21 days after service of the motion on the opposing party. Fed. R. Civ. P. 11(c)(2).

The imposition of Rule 11 sanctions is "not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell*, 496 U.S. at 396. Moreover, sanctions imposed under Rule 11 must "be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). "If warranted, the court may award to the prevailing party [of a Rule 11 motion] the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2).

## DISCUSSION

At issue here is Mr. Bell's claim that NCS violated the FCRA, as alleged in his Second Amended Complaint. Dkt. 59. Thus, the Court must determine whether the claim was legally or factually basis, from an objective perspective, at the time the attorney signed the complaint. The Court must also determine if the attorney conducted a reasonable and competent inquiry before signing and filing it. *Christian*, 286 F.3d at 1127 ("[w]here as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct [the] two-prong inquiry) (citing *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). To place the FCRA claim in context, the Court turns first to the elements of a FRCA claim.

"A primary purpose for the FCRA [is] to protect consumers against inaccurate and incomplete credit reporting." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155–56 (9th Cir. 2009) (internal citations omitted); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). To state a claim under §1681s-2(b) of the FCRA, a plaintiff must

REPORT AND RECOMMENDATION - 6

plausibly allege that "(1) he found an inaccuracy in his credit report; (2) he notified a credit reporting agency; (3) the credit reporting agency notified the furnisher of the information about the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s–2(b)(1)(A)–(E)." *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016); *See also Gorman*, 584 F.3d at 1153-54 (9th Cir. 2009).

1. Finding Inaccuracy in Credit Report

Mr. Bell alleges that on or about May 9, 2019, he discovered the following inaccurate reporting of his debt to Copper Ridge:

(a) Equifax, through Privacy Guard,[1] was reporting four separate accounts from the furnisher "Copper Ridge Apts," each in the amount of $5,393.00, effectively reporting a total of $21,572.00 owed to "Copper Ridge Apts." Dkt. 59, ¶ 32.

(b) Experian, through Privacy Guard, was reporting six separate accounts from the furnisher "National Credit Systems," with three in the amount of $5,393.00, and three in the amount of $1,500.00, effectively reporting a total of $20,679.00 owed to "National Credit Systems." *Id*.

(c) Trans Union, through Privacy Guard, was reporting six separate accounts, three (3) in the amount of $5,393.00 from the furnisher "Copper Ridge Apts", and three (3) in the amount of $1500.00 from the furnisher "Sure Deposit." Altogether, Trans Union was reporting a

---

[1] Privacy Guard is a credit information compiler and monthly credit monitoring service that obtains a consumer's credit reports directly from the "big three" National Credit Reporting Agencies ("CRAs") (*i.e.*, Equifax, Experian, and Trans Union) and presents them "side-by-side" for a consumer's review.

REPORT AND RECOMMENDATION - 7

1  total owed of $20,679.00; $16,179.00 to "Copper Ridge Apts" and $4,500.00 to "Sure Deposit."

2  *Id.*

3  Thus, Mr. Bell alleges that NCS both reported false information (a $6,893.56 debt being

4  reported as totaling above $20,000.00) and reported it in a materially misleading manner

5  (separating the one [or possibly two] account(s) into four and/or six tradelines, indicating to a

6  potential creditor that Mr. Bell was seriously delinquent on six separate monetary agreements,

7  when he was only delinquent on one [or possibly two]).

8  The parties disagree as to whether Mr. Bell owed one debt (to Copper Ridge) or two

9  debts (to Copper Ridge and Sure Deposit). Mr. Bell continues to assert that the entire debt owed

10 to NCS was part of a single debt and should have resulted in only one tradeline on his credit

11 report. However, even accepting that the debts are ultimately owed to separate entities (Copper

12 Ridge and Sure Deposit/Assurant), Mr. Bell alleged that Equifax was reporting four separate

13 accounts and both Experian and Trans Union were reporting six separate accounts when at most,

14 there should have been only one (or two if the debts were owed to separate entities).

15       2.      <u>Mr. Bell Notified the CRAs</u>

16 On or about May 29, 2019, pursuant to 15 U.S.C. § 1681i, Mr. Bell mailed certified

17 letters to Equifax, Experian, and Trans Union, disputing the erroneous and duplicative reporting

18 of a $6,893.56 debt as multiple accounts totaling amounts in excess of $20,000.00. Dkt. 59, ¶¶

19 37-38.

20       3.      <u>The CRAs Forwarded Mr. Bell's Dispute to NCS</u>

21 Mr. Bell alleges that the CRAs forwarded Mr. Bell's dispute to NCS. Dkt. 59, ¶ 39. NCS

22 admits receipt of Mr. Bell's dispute. Dkt. 82, p. 5.

23

REPORT AND RECOMMENDATION - 8

4. <u>NCS Failed To Comply With The Requirements Of 15 U.S.C. § 1681s–2(b)(1)(A)–(E)</u>

NCS, as a furnisher, after receiving a dispute, bears the responsibility of investigating the validity of the dispute and (1) modifying, (2) deleting, or (3) permanently blocking the reporting of any item of information found to be "inaccurate or incomplete." § 1681s-2(b)(1)(E)(i)-(iii). Mr. Bell alleges that after NCS received the dispute, NCS provided him with a letter stating that Mr. Bell owed a single debt of $6,893.56 to Copper Ridge. Dkt. 59, ¶ 34. He further alleges that as of September 26, 2019, after Mr. Bell's dispute, NCS was still reporting the Copper Ridge debt to Experian as four separate accounts, two in the amount of $5,393.00 and two in the amount of $1,500.00, effectively reporting a total owed of $13,786.00. Dkt. 59, ¶¶ 43, 45.

NCS states that it investigated Plaintiff's claim that he only owed one debt, verified that both debts belonged to Plaintiff, and that the amounts of each debt were correct. According to NCS, Plaintiff knew or should have known that he owed both Copper Ridge and Sure Deposit because at the time he signed the apartment lease, Mr. Bell also signed a Tenant Bond with Sure Deposit. Dkt. 82, p. 3. After Copper Ridge obtained the eviction judgment against Mr. Bell, it made a claim to Sure Deposit for the $1,500.00 bond amount. NCS then applied the $1,500.00 paid by Sure Deposit to the $6,893.56 balance owed to it by Mr. Bell. Both debts – to Copper Ridge in the amount of $5,393.56 ($6,893.56 minus the $1,500 paid by Sure Deposit) and to Sure Deposit in the amount of $1,500 – were referred to NCS for collection. *Id.*

Accordingly, NCS argues that Mr. Bell's FCRA allegations (Paragraph 52 of the Second Amended Complaint) are "not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law, and are not grounded in law or fact." Dkt. 82, p. 8. NCS points to documents produced in discovery showing that there were clearly two amounts owing, and that NCS was collecting one debt for Copper

REPORT AND RECOMMENDATION - 9

Ridge and one for Sure Deposit. *See, e.g.*, Dkt. 84-1, p. 9. In contrast, Mr. Bell alleged that he owed only one debt and this belief was based on NCS's May 14, 2019 debt validation letter, which clearly indicated that the entire amount due was being claimed on behalf of Copper Ridge only. Mr. Bell continues to assert that the entire debt owed to NCS was part of a single debt and should have resulted in only one tradeline on his credit report. Dkt. 83, p. 16 n.5. This dispute does not show that Mr. Bell brought a frivolous claim. Instead, it merely illustrates that the parties disagree on the facts and applicable law.

In addition, there are allegations in the Amended Complaint that even after its investigation, reporting errors by NCS still remained. Dkt. 59, ¶¶ 43-47. Mr. Bell alleges that NCS failed to modify, delete, or permanently block the reporting of "inaccurate or incomplete" information pursuant to its duty under § 1681s-2(b)(1)(E)(i)-(iii) because NCS did nothing to correct the multiple lines of credit and in fact, the CRAs were still reporting four to six lines of credit. *Id.*, ¶ 45 (Experian changed its reporting to four accounts from NCS – two in the amount of $5,393.00 and two in the amount of $1,500.00; Equifax was reporting the debts as two debts of $5,393.00 owed to Copper Ridge; and Trans Union reported $1,500 owed to Sure Deposit and $5,393.00 owed to Copper Ridge).

The undersigned concludes there was no Rule 11 violation. In addition, there is no evidence that Mr. Bell's counsel failed to conduct a reasonable inquiry. Disagreeing on the facts and applicable law is not grounds for sanctions. Whether Mr. Bell can ultimately prove that NCS failed to comply with its obligations to investigate and correct any inaccurate or complete information is a question more appropriately addressed in a motion for summary judgment after

discovery and after the parties have had an opportunity to fully brief and provide appropriate summary judgment evidence to the Court.[2]

The Ninth Circuit has discussed, at length, the impropriety of bringing Rule 11 motions on complaints which sufficiently state a claim, citing Supreme Court "concerns that [Rule 11] will spawn satellite litigation and chill vigorous advocacy…" *In re Keegan Mgmt. Co., Sec Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) (quoting *Cooter & Gell*, 496 U.S. at 393). "We do little to undermine the deterrent goals of [Rule 11] by not sanctioning complaints which have merit on their face. The potential for such sanctions, however, may do much to increase the frequency of the collateral litigation that is Rule 11's unfortunate side effect. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 435.

NCS bases its Rule 11 motion on "conclusive evidence" *i.e.* the "lease, bond, and final statement provided by NCS in April 2019," and argues that Mr. Bell and his counsel had the same access to information that NCS did. Dkt. 82, p. 8. Thus, it is curious that NCS would wait almost a year to claim that Mr. Bell's FCRA claim is frivolous.[3] Instead of filing a Rule 11 motion or a motion to dismiss months ago, NCS chose to file answers to Mr. Bell's complaints and fully defend and participate in this litigation. Since November 8, 2019 and the filing of the First Amended Complaint (naming NCS) (Dkt. 7), NCS filed an answer asserting various

---

[2] NCR's resort to LCR 11(c) is likewise unavailing as there is no evidence that Plaintiff or his counsel failed to comply with the federal rules, the local rules, an order of the court, or otherwise multiplied or obstructed these proceedings. Additionally, the Court declines to consider new arguments raised by NCR in its reply (attempts to settle, discovery issues, vague references to a deposition, and a conclusory and unsupported claim that the Privacy Guard credit report does not actually contain information from Trans Union, Equifax, and Experian). *See* Dkt. 84.

[3] Although the Second Amended Complaint is at issue, the original complaint and every amendment thereafter included the claim that NCS violated the FCRA. *See* Dkt. 1 (Original Complaint); Dkt. 7 (Amended Complaint); Dkt. 59 (Second Amended Complaint). *See also* Dkt. 6 (voluntary dismissal of National Credit Services, Inc.) and Dkt. 7 Amended Complaint (naming National Credit Systems, Inc.)

REPORT AND RECOMMENDATION - 11

affirmative defenses (Dkt. 27); filed an amended answer asserting some but omitting other previously asserted affirmative defenses (such as failure to state a claim) (Dkt. 48); participated in the preparation of a joint status report and discovery plan (Dkt. 51); did not oppose Plaintiff's motion to file the Second Amended Complaint (to include new facts learned in discovery and to add a Fair Debt Collection Practices Act claim) (Dkt. 57); filed an answer to the Second Amended Complaint, asserting *inter alia*, that NCS is entitled to a setoff from Mr. Bell's settlement with Sure Deposit (Dkt. 67); and joined in a stipulated protective order to govern the parties' discovery (Dkt. 70).

These actions contradict NCS's claim now that Mr. Bell "continues to advance this lawsuit – where it is patently obvious that there are no grounds for relief." Dkt. 84, p. 1. Rule 11 sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)). This is not such a case.

C. <u>Plaintiff's Request for Fees and Costs Under 28 U.S.C §1927</u>

Mr. Bell requests an award of reasonable attorney's fees and costs, pursuant to 28 U.S.C §1927, that he incurred in defending against NCS's Rule 11 motion. Mr. Bell argues that NCS has wasted Mr. Bell's time and resources and attacked his character and that of his counsel in a public filing. Mr. Bell further contends that NCS brought its motion in a purposefully confusing, underhanded, and duplicitous manner, *i.e.*, requesting dismissal of the entire complaint when it failed to address two of the three claims asserted, improperly submitting unauthenticated evidence, and for requesting a Rule 11 sanction when Mr. Bell brought a plausible claim. Dkt. 83, p. 20.

"[Section 1927] permits a federal district court to sanction an attorney personally who multiplies the proceedings in any case unreasonably and vexatiously." *Estate of Blas Through Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (internal quotation marks omitted); *see* 28 U.S.C. § 1927. "Section 1927 sanctions require a bad faith finding," *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990) (citing *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1185 (9th Cir. 1988)), and "[a] district court may impose sanctions under [S]ection 1927 only on a showing of the attorney's recklessness or bad faith." *Estate of Blas*, 792 F.2d at 860 (citation omitted). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument ... or argues a meritorious claim for the purpose of harassing an opponent." *Id*. (citations omitted).

The Court agrees that NCS has unreasonably multiplied the proceedings in this case by asking for a dismissal on the merits of Mr. Bell's complaint through a Rule 11 motion. Counsel should know that Rule 11 is not the vehicle to obtain a judgment on the merits as it applies only to the signing of a pleading or motion and when evaluating the pleading, the Court looks objectively at the attorney's conduct at the time of signing. *Community Elec. Serv. v. National Elec. Contractors Ass'n, Inc*., 869 F.2d 1235, 1243 (9th Cir.), *cert. denied*, 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989). Moreover, even when a Rule 11 violation has been shown, sanctions are not automatic and are to be compensatory rather than punitive in nature.

NCS's decision to use a Rule 11 motion to legally attack the substance of Mr. Bell's entire complaint, while personally attacking Plaintiff and his counsel, was ill advised and reckless. In addition, NCS supported this purported Rule 11 motion with hundreds of unauthenticated documents and raised novel and unsupported matters in its response. NCS's decision to cloak a motion to dismiss on the merits in the guise of a Rule 11 motion, does further

REPORT AND RECOMMENDATION - 13

violence to the purpose behind the FCRA ("to protect consumers against inaccurate and incomplete credit reporting…" *Gorman*, 584 F.3d at 1155–56), and fully realizes the Supreme Court's stated concern that Rule 11 motions "spawn satellite litigation and chill vigorous advocacy…". *Cooter & Gell*, 496 U.S. at 393.

For these reasons, the undersigned recommends that Mr. Bell be awarded attorney's fees and costs incurred in defending against NCS's motion for sanctions and that his attorney be directed to submit an affidavit in support of her fees and costs for the Court's consideration.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than Tuesday, **November 3, 2020.** The Clerk should note the matter for Thursday, **November 5, 2020**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed six (6) pages. The failure to timely object may affect the right to appeal.

DATED this 14th day of October, 2020.

/s/ BAT
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 14